NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CARL M. BURNETT,**

*Plaintiff-Appellant*

**v.**

**PANASONIC CORPORATION, PANASONIC CORPORATION OF NORTH AMERICA, PANASONIC INTELLECTUAL PROPERTY CORPORATION OF AMERICA,**

*Defendants-Appellees*

---

2018-1234

---

Appeal from the United States District Court for the District of Maryland in No. 8:17-cv-00236-PX, Judge Paula Xinis.

---

Decided: July 16, 2018

---

CARL M. BURNETT, Silver Spring, MD, pro se.

JOSEPH CASINO, Wiggin and Dana LLP, New York, NY, for defendants-appellees. Also represented by MICHAEL J. KASDAN; BENJAMIN M. DANIELS, New Haven, CT.

---

Before O'MALLEY, CLEVENGER, and REYNA, *Circuit Judges.*

PER CURIAM.

Carl M. Burnett ("Burnett") appeals an order of the United States District Court for the District of Maryland dismissing Burnett's amended complaint for failure to state a claim upon which relief can be granted. *Burnett v. Panasonic Corp.*, No. 17-cv-0236 (D. Md. Nov. 1, 2017) ("*District Court Decision*"). Specifically, because the district court held that claims 1 and 9 of U.S. Patent No. 7,107,286 ("the '286 patent") are invalid as directed to ineligible subject matter under 35 U.S.C. § 101, it concluded that dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure was appropriate. Burnett argues that the asserted claims are patent-eligible, that the district court erred procedurally when it failed to construe five allegedly disputed claim terms, and that the district court violated Burnett's due process rights when it failed to hold Rule 12(b)(6) and claim construction hearings. We *affirm*.

I

Burnett sued Panasonic Corporation ("Panasonic") for infringement of independent claims 1 and 9 of the '286 patent, which recite:

1. A geospatial media recorder, comprising:

converting means for converting longitude and latitude geographic degree, minutes, and seconds (DMS) coordinate alphanumeric representations or decimal equivalent geographic coordinate alphanumeric representations and altitude alphanumeric representations into individual discrete all-natural number geographic coordinate and measurement representations; and

combining means for concatenating the individual discrete all-natural number geographic coordinate and measurement representations into a single discrete all-natural number geospatial coordinate measurement representation for identification of a geospatial positional location at, below, or above earth's surface allowing user to geospatially reference entities or objects based on the identified geospatial positional location and point identification.

\* \* \*

9. A geospatial information processing method comprising:

converting latitude and longitude geographic degree, minutes, and seconds (DMS) coordinate alphanumeric representations or decimal equivalent geographic coordinate alphanumeric representations and altitude alphanumeric representations into individual discrete all-natural number geographic coordinate and measurement representations; and

concatenating the individual discrete all-natural number geographic coordinate and measurement representations into a single discrete all-natural number geospatial coordinate measurement representation for identification of a geospatial positional location at, below, or above earth's surface allowing a user to geospatially reference entities or objects based on the identified geospatial positional location and point identification.

'286 patent, col. 13, l. 60–col. 14, l. 9; *id.* at col. 15, ll. 5–21.

Panasonic moved to dismiss for failure to state a claim upon which relief can be granted. In his response to Panasonic's motion to dismiss, Burnett proposed construc-

tions of certain claim terms, which Panasonic did not dispute, Suppl. J.A. 671–672. First, Burnett proposed construing the preamble of claim 1, "geospatial media recorder," as limiting and to mean "[a] video camcorder that has a receiving station to receive geospatial information and a video encoder to encode geospatial information, the GEOCODE®, onto video at the time of video acquisition." Suppl. J.A. at 654. Burnett also proposed construing at least a portion of the preamble of claim 9, "geospatial information," as limiting and to mean "[s]atellite navigation systems data concerning geospatial entities obtained through a variety of methods . . . ." Suppl. J.A. at 653. Next, Burnett proposed construing "concatenating," which appears in both claims, as "[a] programming process that is the operation of joining two strings together . . . ." Suppl. J.A. at 653. Burnett also proposed construing "converting," which appears in both claims, as "[t]he computer process of taking geospatial positioning representations in Degree-Minute-Second, or Decimal Degree, and altimetric format and other geospatial information and changing these geospatial positioning entities into an all-natural number that can be used to create a geospatial coordinate, the GEOCODE® for use as a data segment or object in geospatial information system processing operations and analysis." Suppl. J.A. at 654. Finally, Burnett proposed construing "geospatial positional location and point identification" as "[t]he vertex of the planular geospatial measurement representations of longitude and/or latitude and/or altitude and/or other measurement representations." Pl.'s Sur-reply in Opp'n to Def.'s Mot. to Dismiss, *Burnett v. Panasonic Corp.*, No. 17-cv-0236, at 15 n. 1 (D. Md. Apr. 21, 2017), ECF No. 23-1.

In its decision, the district court first found that the claims are directed to a patent-ineligible mathematical methodology "for converting geographic coordinates into alphanumeric representations." *District Court Decision*,

at 10. Next, the district court found that any additional features of the asserted claims, such as limitations directed to using a computer to implement the mathematical methodology, do not transform the nature of claims into patent-eligible concepts. *Id.* at 11–13. In its analysis, the district court acknowledged and implicitly accepted Burnett's proposed claim constructions. *Id.* at 9 n.6. The district court concluded that the asserted claims are patent-ineligible and dismissed Burnett's amended complaint pursuant to Rule 12(b)(6). Burnett appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). For the reasons stated below, we find that, even accepting Burnett's proposed constructions, the asserted claims are patent-ineligible.

II

The Fourth Circuit reviews de novo a dismissal under Rule 12(b)(6). *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385 (4th Cir. 2009). "We have held that patent eligibility can be determined at the Rule 12(b)(6) stage," but "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Here, the district court appropriately assessed eligibility at the pleading stage because the asserted claims are patent-ineligible even when accepting as true all factual allegations pled in Burnett's amended complaint.[1]

---

[1] Burnett's factual allegations include allegations under step two of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), and extrinsic evidence supporting his proposed claim constructions. When applying step two of *Alice*, we have said that the question of "[w]hether the claim elements or the claimed combination are well-understood, routine, conventional is a ques-

Patent-eligible subject matter, as defined in § 101, includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . ." The Supreme Court has long held that "[l]aws of nature, natural phenomena, and abstract ideas" are exceptions to § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). These exceptions render ineligible, for example, mathematical formulas. *Gottschalk v. Benson*, 409 U.S. 63, 67 (2012).

We apply a two-step test to determine whether a claim is directed to eligible subject matter. *Alice*, 134 S. Ct. at 2355; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 75–77 (2012). First, we determine whether the claim is directed to a law of nature, a natural phenomenon, or an abstract idea. *Alice*, 134 S. Ct. at 2355. If so, then we proceed to step two and consider the elements of the claim "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-

---

tion of fact." *Aatrix*, 882 F.3d at 1128. Here, Burnett does not contest that each element of the asserted claims is well-understood, but rather argues that the elements from each claim form new combinations. Appellant Br. 48–53. Burnett also submits extrinsic evidence in the form of dictionary definitions in support of his proposed claim constructions, which the Supreme Court has held can give rise to a factual dispute. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837–38 (2015). None of these factual allegations precludes resolution of the eligibility question at the pleading stage because Panasonic does not dispute these allegations, and because we conclude that the asserted claims are patent-ineligible even when accepting the allegations as true.

eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78, 79).

A

Starting at step one, we agree with the district court's conclusion that the claims at issue are directed to an abstract idea. Both claims 1 and 9 are directed to, first, converting longitude and latitude coordinates into natural numbers—i.e. removing the decimal points and replacing any "+" signs with a "1" and any "−" signs with a 0—and second, concatenating the resulting natural numbers—i.e. joining the strings of resulting numbers together. *See, e.g.*, '286 patent, at col. 12, l. 50–col. 13, l. 14; *id.* at Figure 26. In sum, the claims apply a mathematical methodology to convert geospatial coordinates into a single string of natural numbers.

Like the concept of using a formula to convert binary-coded decimals into pure binary numerals, which the Supreme Court found to be an abstract idea in *Gottschalk*, 409 U.S. at 72, the concept of using a formula to convert geospatial coordinates into natural numbers, if found eligible, "would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." Claims 1 and 9 are both directed to a similarly abstract idea.

Burnett contends that the asserted claims, construed as Burnett proposes, are not directed to a mathematical methodology. For example, Burnett contends that, because his proposed construction of "concatenating" begins with "programming process," it is not a mathematical methodology, but rather a "data programming process." Appellant Br. at 26. We disagree because each claim, at its core, is directed to an abstract idea. Accepting that the "concatenating" limitation is directed to a "programming process" does not change this result. We have held that a process that starts with data, applies an algorithm, and ends with a new form of data is directed to an abstract

idea. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014). Similarly, here, the "concatenating" programming process merely joins a string of numbers together, constituting the final algorithmic step of converting the geospatial coordinate data into a new form of data. Thus, Burnett's proposed construction of "concatenating" does not change the fact that the claims are directed to an abstract idea.

Next, Burnett argues that his proposed construction of "converting" identifies the term as "a prescriptive step required for data programming process of concatenation." Appellant Br. at 28. That the "converting" step necessarily precedes the "concatenating" step does not change the fact that the claims are directed to an abstract idea. The "converting" step is merely an earlier step in the process of mathematically converting the data into a new form. Thus, the "converting" step also does not transform the mathematical methodology into eligible subject matter because the step amounts to routine data processing.

The remainder of Burnett's arguments related to his proposed claim constructions stand for the proposition that "the claims recite significantly more than the purported idea of a 'mathematical methodology.'" Appellant Br. at 46. But that a claim allegedly contains more than an abstract idea does not mean the claim survives step one, because, under that inquiry, it is enough that the claims are directed to a mathematical methodology at all; rather, Burnett's argument is more appropriately assessed under our inquiry in step two. *Alice*, 134 S. Ct. at 2355 (assessing under step two whether additional features in a claim transform an otherwise a patent-ineligible concept into a patent-eligible concept).

## B

Turning to step two, we ask "[w]hat else is there in the claims before us" and whether those "additional features . . . provide practical assurance that the [claims

are] more than a drafting effort designed to monopolize [the abstract idea]." *Mayo*, 566 U.S. at 77, 78. Here, we agree with the district court that the additional features, viewed individually and as an ordered combination, are not "sufficient to transform the nature of the claim[s]." *Id.* at 78.

The only additional features recited in claim 1 are the preamble providing for "[a] geospatial media recorder," '286 patent, at col. 13, l. 60, and the limitation of "allowing user to geospatially reference entities or objects based on the identified geospatial positional location and point identification," *id.* at col. 14, ll. 7–9. Similarly, the only additional features recited in claim 9 are the preamble providing for "[a] geospatial information processing method," *id.* at col. 15, ll. 5, and the limitation of "allowing a user to geospatially reference entities or objects based on the identified geospatial positional location and point identification," *id.* at col. 15, ll. 19–21.

As the district noted, these additional features effectively do no "more than simply state the [abstract idea] while adding the words 'apply it.'" *Mayo*, 566 U.S. at 72. The preambles of both claims, as construed by Burnett, instruct a user to implement the mathematical methodology or instruct using a "geospatial media recorder" to do the same. Such "wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice*, 134 S. Ct. at 2358 (quoting *Mayo*, U.S. at 77); *accord Gottschalk*, 409 U.S at 70–72.

The remaining additional feature, "allowing [a] user to geospatially reference entities or objects based on the identified geospatial positional location and point identification," recited in both claims, similarly does not transform the nature of the claim, and merely recites a potentially useful result of the invention. '286 patent, at

col. 14, ll. 7–9, col. 15, ll. 19–21. The prosecution history of the '286 patent is particularly relevant here. During prosecution, the examiner amended claim 1 and claim 12 (renumbered as claim 9 before issuance) by adding the additional feature to bring the claims in compliance with the § 101 standard applied at that time. Suppl. J.A. 24; *see also id.* at 20–23. Under this previous standard, courts and examiners considered whether the claims had a "useful, concrete and tangible result." *In re Bilski*, 545 F.3d 943, 959 (Fed. Cir. 2008) (en banc). This standard no longer governs. *Id.* at 959–60 (concluding "that the 'useful, concrete and tangible result' inquiry is inadequate . . . ."); *see also Bilski v. Kappos*, 561 U.S. 593, 659 (2010) (Breyer, J., concurring) ("[A]lthough the machine-or-transformation test is not the only test for patentability, this by no means indicates that anything which produces a 'useful, concrete, and tangible results,' is patentable. This Court has never made such a statement and, if taken literally, the statement would cover instances where this Court has held the contrary." (internal quotations and citations omitted)). While this additional feature may demonstrate that the invention produces a useful result, it does not transform the abstract idea into patent-eligible subject matter under the Supreme Court's decision in *Alice*.

Burnett argues that claim 1 "cover[s] a 'combination of elements' that form a new machine, a Geospatial Media Recorder," and that claim 9 covers a "new data programming process . . . ." Appellant Br. at 48. Burnett points to the Supreme Court's decision in *Diamond v. Diehr*, 450 U.S. 175, 188 (1981), for the proposition that "a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." Burnett argues that, similarly, here, "a media recorder that encode[s] geospatial information as a[n] item of metadata to solve geospatial data communication

problems in video production environments had never before been invented." Appellant Br. at 53.

Burnett is correct that a new combination of steps, though individually ineligible or well-known, can give rise to a patent-eligible claim, but this purportedly new combination must still survive the step two inquiry. As stated above, claim 9 does no more than instruct a user to implement the abstract idea of converting geospatial coordinates into natural numbers, and claim 1 merely provides for a "Geospatial Media Recorder" to implement the same abstract idea. Thus, these purportedly new combinations do not transform the abstract idea into a patent-eligible concept under our precedent.

We have reviewed Burnett's remaining arguments regarding eligibility, and we reject them as both unpersuasive and applying legal standards that no longer govern or that govern outside of the context § 101. *See, e.g.*, Appellant Br. at 32, 51 (citing this court's decision in *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994), which was superseded by *Bilksi v. Kappos*, 561 U.S. 593 (2010) and *Alice*.); Appellant Br. at 34, 51 (citing this court's decision in *WMS Gaming Inc. v. International Game Technology.*, 184 F.3d 1348 (Fed. Cir. 1999), which does not address patent eligibility).

## III

Burnett also argues that the district court erred when it failed to construe allegedly disputed claim terms, and that it violated Burnett's due process rights when it failed to hold claim construction and 12(b)(6) hearings prior to dismissing Burnett's amended complaint. The district court did not need to hold a claim construction hearing or issue a claim construction order because Panasonic did not dispute Burnett's proposed constructions, Suppl. J.A. 671–672, and because the asserted claims are patent-ineligible even in view of Burnett's proposed constructions. Moreover, "[t]here is no requirement . . .that a

district judge hold a hearing prior to ruling on a motion to dismiss." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). Therefore, the district court did not err procedurally, nor did it violate Burnett's due process rights.

## IV

For the reasons stated above, we *affirm* the district court's order dismissing Burnett's amended complaint, holding that claims 1 and 9 of the '286 patent are ineligible.

**AFFIRMED**

COSTS

No costs.